1

2

3

4

5

6        **UNITED STATES DISTRICT COURT**

7            EASTERN DISTRICT OF CALIFORNIA

8    ARLONDA BOATWRIGHT,            )   1:10-cv-01895-BAM
                                     )
9                                    )   **ORDER ON PARTIES CROSS-MOTIONS**
                    Plaintiff,       )   **FOR SUMMARY JUDGMENT**
10                                   )
        v.                           )
11                                   )
    MICHAEL ASTRUE,                  )
12   COMMISSIONER OF SOCIAL          )
     SECURITY,                       )
13                                   )
                                     )
14                  Defendant.       )
                                     )
15

16                        **I.    INTRODUCTION**

17          Plaintiff Arlonda Boatwright ("Plaintiff") seeks judicial review of an administrative

18   decision denying her claim for disability benefits under the Social Security Act, Title XVI (the

19   "Act").   Pending before the Court is Plaintiff's motion for summary judgment and the cross-

20   motion for summary judgment of defendant Commissioner of Social Security ("Commissioner").

21   Plaintiff filed her complaint on October 8, 2010.  (Doc. 1.)  Plaintiff filed her summary judgment

22   motion on May 12, 2011.  ( Doc. 14.)   The Commissioner filed his summary judgment cross-

23   motion and opposition on June 13, 2011.  (Doc. 15.)  Plaintiff filed her Reply Brief on June 27,

24   2011.  (Doc. 16.)  This matter was reassigned to the undersigned judge on October 17, 2011

25   (Doc. 17.) The matter is currently before the Court on the parties' briefs, which were submitted

26   without oral argument to United States Magistrate Judge Barbara A. McAuliffe.[1]

27

28
        _____

            [1] The parties consented to the jurisdiction of the United States Magistrate Judge. (Doc. 10, 18.)

1

## II.   BACKGROUND

2

**A.    Overview of Administrative Proceedings**

3      On June 29, 2006, Plaintiff applied for disability insurance benefits under Title XVI of

4  the Social Security Act.  (Administrative Record ("AR") at 109, 135.)  Plaintiff alleges she is

5  unable to work due to illiteracy, a learning disability, mental problems and depression (AR at

6  119, 135).

7      Plaintiff's application was initially denied and denied again on reconsideration.  (AR at

8  69, 75.)  Plaintiff's application was subsequently denied by an Administrative Law Judge

9  ("ALJ") in a decision issued on August 29, 2008. (AR at 20-26.)  The Appeals Council denied

10 review on June 18, 2010. (AR at 13-16.)  Plaintiff filed this action for judicial review pursuant to

11 42 U.S.C. § 405(g) and 1383.  (Doc. 1.)

12

**B.    Plaintiff's Testimony At the Administrative Hearing**

13     Plaintiff was born on July 25, 1984. (AR at 31.)  The highest level of education

14 completed by Plaintiff was tenth grade special education classes.  (AR at 31.)  Plaintiff testified

15 to being incapable of any math and having very limited reading capabilities.  (AR at 32.)  At the

16 time of the hearing, Plaintiff had a daughter who was three years old.  (AR at 32.)  Plaintiff

17 spends "all day" taking care of her daughter, which consists of cooking, cleaning and other

18 "normal things."  (AR at 39.)

19     Plaintiff has not worked since 2007.  (AR at 33.)  Plaintiff's most recent employment was

20 at a McDonald's restaurant – a position which entailed stocking and cleaning tables.  (AR at 40.)

21 Plaintiff testified she no longer worked at McDonald's because she was laid off.  (AR at 40.)

22 Sometime between 2004 and 2007, Plaintiff braided hair for money (AR 34-38.)  Plaintiff

23 performed this job at a shop open to the public as well as by going around to other peoples'

24 houses.  (AR at 46-47.)  Plaintiff testified that she stopped braiding hair because she lost her

25 clientele, however, if she had clients, she would still be capable of braiding hair.  (AR at 37-38.)

26 Plaintiff testified she generally can not work because "it's hard for [her] to get along with

27 people."  (AR at 39.)

28

1    Plaintiff was asked "why [she] can't work full-time at any job," such as "the simplest job

2    in the world [–] just putting widgets in a box[,]," or "pick[ing] cotton or put[ting] potatoes in a

3    box." (AR at 39.)  Plaintiff responded that she struggled to do math in her head, however, she

4    could "probably" perform the above-referenced menial jobs.  (AR at 39-40.)  When Plaintiff was

5    asked why she had not tried to obtain one of those jobs, Plaintiff responded that she "can't read"

6    or "fill out papers." (AR at 40.)

7            **1.      Testimony of Plaintiff's Friend, Claryce Taylor**

8            Claryce Taylor ("Taylor") is Plaintiff's "best friend," lives "[a]round the corner" from

9    Plaintiff and sees Plaintiff "every day."  (AR at 41-42.)  Taylor testified that every morning, she

10   goes to Plaintiff's home and wakes Plaintiff up, and then helps Plaintiff clean her home and

11   assists with Plaintiff's daughter.  (AR at 42.)

12           Taylor testified that Plaintiff struggles to remember things and follow instructions.  (AR

13   at 42.)  Taylor drives Plaintiff around to help her run errands, and goes grocery shopping on

14   Plaintiff's behalf.  (AR at 42.)  Taylor testified that Plaintiff "doesn't do anything herself" and

15   that Taylor "do[es] it for her." (AR at 44.)

16           Taylor was asked if she believed Plaintiff could work full-time at any job.  (AR at 45.)

17   Taylor testified to her belief that Plaintiff could not work a full-time job, specifically, "eight

18   hours a day," because Plaintiff did not get along with others.  (AR at 45.)  However, Taylor also

19   testified to her belief that Plaintiff could "[p]robably [work] like a few hours [a day,] or

20   something like that."  (AR at 45.)  Taylor was asked if the reason Plaintiff could not work a full-

21   time job was due to Plaintiff's memory and concentration problems, to which Taylor responded

22   "[n]o.  It's not . . ." (AR at 45-46.)  Taylor did not provide an explanation for her belief Plaintiff

23   could not work a full-time job.  (AR at 41-47.)

24   **D.    Medical Evidence**

25           The medical evidence within the Administrative Record consists of three consultative

26   examinations undertaken by Plaintiff for purposes of three separate SSI applications.  Plaintiff

27   was examined by Michael Musacco, Ph.D., in September 2003 (AR 224-28), and again by Dr.

28   Musacco in April 2005.  (AR 175-78.)  For Plaintiff's current SSI application, Plaintiff was

                                                    3

1  examined by Greg Hirokawa, Ph.D., in September 2006.  (AR 200-205.)   Dr. Hirokawa's

2  findings and opinions were reviewed by the state agency psychiatrist M.C. Vea, M.D.  (AR at

3  214-219.)

4          **1.      Michael G. Musacco, Ph.D., September 11, 2003 Examination**

5          On September 11, 2003, examining psychologist Dr. Musacco examined Plaintiff in

6  connection to a previous application for SSI in 2003.  (AR at 224.)  Dr. Musacco offered a

7  diagnosis of dysthymic disorder "to account for [Plaintiff's] self-report . . . of sadness, irritability,

8  anger, and guilt," and borderline intellectual functioning.  (AR at 227.)

9          During this examination, Dr. Musacco recorded Plaintiff's major complaints and took

10  Plaintiff's history.  (AR at 224-25.)  Plaintiff described her daily activities as consisting of

11  watching television, taking walks or sitting in the park.  (AR at 225.)  Plaintiff stated she was

12  able to complete activities of daily living such as washing dishes, cleaning her bedroom, laundry

13  tasks and cooking. (AR at 25.)  Plaintiff's transportation needs were met by either taking the bus

14  or relying on family members.  (AR at 225.)

15          At this time, Plaintiff's I.Q. scores were measured as Verbal I.Q. of 71, Performance I.Q.

16  of 70 and a Full Scale I.Q. of 68.  (AR at 226.)  Accordingly, Plaintiff's Full Scale I.Q. score fell

17  in the Upper Mild to Low Borderline range.  (AR at 227.)   Dr. Musacco, however, noted that

18  Plaintiff did not demonstrate significant deficits in her adaptive functioning in a manner

19  consistent with a finding of Mild Mental Retardation.  (AR at 227.)  Specifically, Plaintiff's

20  social skills, grooming, hygiene and overall presentation was suggestive of borderline

21  intelligence.  (AR at 226.) Dr. Musacco thus opined that Plaintiff's symptoms were more

22  commensurate with a diagnosis of borderline intellectual functioning.  (AR at 227.)

23          Dr. Musacco described Plaintiff's ability to complete employment involving repetitive

24  and non-demanding work as follows:

25          The claimant is able to understand, carry out, and remember simple instructions.
            It is my opinion that the claimant is capable of responding appropriately to co-
26          workers, supervisors, and the public.  I also believe that the claimant is capable of
            responding to usual work situations or dealing with changes in a routine work
27          setting.  However, the claimant does not have a history of competitive
            employment and does not possess work skills.  Furthermore, the claimant is
28          unable to effectively read or write, and her irritability and mood problems impact

                                                    4

her social functioning to some degree.  Nevertheless with appropriate support, it is recommended that the claimant is capable of completing employment which involves repetitive and nondemanding work tasks.

### 2.    Michael G. Musacco, Ph.D., April 13, 2005 Examination

Dr. Musacco reexamined Plaintiff on a second SSI claim on April 13, 2005.  (AR at 175-78.)  During this examination, Dr. Musacco recorded Plaintiff's major complaints and took Plaintiff's history.  Plaintiff summarized her daily activities as watching television and talking on the phone.  (AR at 176.)  Plaintiff represented that she was able to shop for groceries, cook, clean and do laundry chores independently.  (AR at 176.)

On this date, Plaintiff's I.Q. scores were measured as a Verbal I.Q. of 60, Performance I.Q. of 67 and a Full Scale I.Q. of 59.  (AR at 177.)  Based on the complete results of the examination, Dr. Musacco offered the diagnosis of Depressive Disorder and Provisional Mental Retardation.  (AR at 178.)  In explaining his diagnosis of Mild Mental Retardation on a provisional basis only, Dr. Musacco stated that while Plaintiff's

> "Full I.Q. score falls solidly in the Mildly Impaired range and her memory skills were also significantly depressed . . . claimant's adaptive functioning is not obviously impaired to a significant degree.  The claimant indicated that she is independent in her activities of daily living and this data is not consistent with a diagnosis of Mild Mental Retardation therefore, the diagnosis is offered on a provisional basis."

(AR at 178.)

### 3.    Greg Hirokawa, Ph.D.

On September 23, 2006, consultative psychologist Greg Hirokawa, PhD, examined Plaintiff in connection with her current disability application.  (AR at 200-05.)  During the mental status examination, Plaintiff's eye contact was good, her facial expressions were appropriate, her behavior was cooperative, and her attitude was pleasant with a good sense of humor.  (AR at 202.)  Plaintiff's stream of mental activity and association of thought was normal, her articulation was clear, her velocity and volume of speech was normal, and the quantity of speech was normal.  (AR at 202.)  Plaintiff's content of thought appeared appropriate, there was no evidence of delusional thinking, and her reality contact was intact.  (AR at 202.)  Plaintiff's mood was depressed, but her affect was appropriate.  (AR at 292.)  Plaintiff was able to do

simple addition and multiplication, and her calculation processing speed was within normal limits.  (AR at 203.)

Dr. Hirokawa pined that Plaintiff had "Low average intellectual functioning."  (AR at 204.)  Dr. Hirokawa opined that Plaintiff had the following work-related abilities:

• a good ability to remember locations and work-like procedures;
• a good ability to understand and remember very short and simple instructions;
• a good ability to carry out very short and simply instructions;
• a good ability to maintain attention and concentration for extended periods;
• a good ability to accept instructions from supervisors and respond appropriately to criticism;
• a good ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances;
• a good ability to function independently and sustain an ordinary routine without special supervision;
• a good ability to complete a normal workday/workweek without interruptions from psychologically based symptoms; and
• a good ability to perform at a consistent pace.

(AR at 204-05.)

**4.     M.C. Vea, M.D.**

On October 17, 2006, psychiatrist M.C. Vea, M.D., reviewed the evidence in the record and opined that Plaintiff had mild limitations with activities of daily living and social functioning, and moderate limitations in maintaining concentration, persistence and pace.  (AR at 214.)  Dr. Vea opined that Plaintiff did not meet the diagnostic criteria for Listing 12.05 Mental Retardation.  (AR at 214.)  Dr. Vea stated that Plaintiff had the functional capacity to understand simple and detailed job instructions, adapt to changes in the work setting, and could maintain concentration, persistence and pace for work involving simple repetitive tasks.  (AR at 219.)

**E.     ALJ Findings**

The ALJ determined that Plaintiff was not disabled within the meaning of the Social Security Act.  (AR at 20.)  In making this determination, the ALJ made the following findings:

1.     Plaintiff has not engaged in substantial gainful activity[2] since June 29, 2006, the application date (20 CFR 416.920(b) and 416.971 *et seq.*);

---

[2] The ALJ noted that while Plaintiff's earning statements indicated she had earned income of $6,832.00 in 2007, this amount did not rise to substantial gainful activity. (AR at 22.)

2.    Plaintiff has the following severe impairment: borderline intellectual functioning (20 CFR 416.920(C)).

3.    Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), and 416.925 and 416.926);

4.    Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels involving simple repetitive tasks;

5.    The claimant has no past relevant work (20 CFR 416.965);

6.    Transferability of job skills is not an issue because Plaintiff does not have past relevant work (20 CFR 416.968);

7.    Considering Plaintiff's age, education, work experience and residual functional capacity, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform (20 CFR 416.960(c) and 416.966);

8.    Plaintiff has not been under a disability, as defined in the Social Security Act, since June 29, 2006, the date the application was filed (20 CFR 416.920(g)).

(AR at 22-26.)

### III.    STANDARD OF REVIEW

Congress has provided a limited scope of judicial review of a Commissioner's decision. *See* 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. *See Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985). Substantial evidence is "more than a mere scintilla," *see Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. If the evidence could reasonably support a finding of either disability or non-disability, the finding of the Commissioner is conclusive. *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, *inter alia*, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f). Applying this process in this case, the ALJ found that Plaintiff: (1) had not engaged in substantial gainful activity since June 29, 2006; (2) has the following severe impairment: borderline intellectual functioning (20 CFR 416.92(C); (3) does not have an impairment or combination of impairments which meets or equals one of the impairments set forth in 20 CFR Part 404, Subpart P, Appendix 1; (4) has the residual functional capacity to perform a full range of work at all exertional levels involving simple repetitive tasks; and (5) could perform jobs that exist in significant numbers in the national economy. (AR at 22-25.)

Thus, this Court reviews the Commissioner's decision pursuant to 42 U.S.C. § 405(g) to determine whether it is: (1) based on proper legal standards; and (2) supported by substantial evidence in the record as a whole. *Copeland v. Bowen*, 861 F.2d 536, 538 (9th Cir. 1988).

## IV.    DISCUSSION

### A.    Plaintiff's Arguments on Appeal

Plaintiff argues that the ALJ erred in his determination that Plaintiff did not have impairments which met or equaled those discussed in Listing 12.05 for Mental Retardation. Specifically, Plaintiff argues that: (1) the record does not support the ALJ's finding regarding Plaintiff's intact functioning and non-dependence on others; and (2) the ALJ improperly

evaluated two sets of IQ scores which would have otherwise qualified Plaintiff for benefits under Listing 12.05.

**B.    Legal Standard Under Listing 12.05**

Listing 12.05 provides as follows:

> ***Mental retardation:*** Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.,* the evidence demonstrates or supports onset of the impairment before the age of 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D[3] are satisfied.
>
> > A.    Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing or bathing) and inability to follow directions, such that the use of standardized measures of intellectual functioning is precluded; OR
> >
> > B.    A valid verbal, performance, or full scale IQ of 59 or less; OR
> >
> > C.    A valid verbal, performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function; OR

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05

To qualify as presumptively disabled under § 12.05, the claimant must "satisf[y] the diagnostic description in the introductory paragraph [§ 12.05] and any one of the four sets of criteria [outlined in paragraphs A, B, C, or D]." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(A); *Sorter v, Astrue,* 389 Fed. Appx. 620, 622 (9th Cir. 2010).

**C.    Substantial Evidence Supports the ALJ's Finding that Plaintiff's Impairments Did Not Meet or Medically Equal Listing 12.05**

**1.    Plaintiff's Satisfaction of the Diagnostic Description In the Introductory Paragraph**

The Commissioner argues that the validity of the ALJ's decision need not rest on the results of Plaintiff's I.Q. testing because the medical evidence demonstrated that Plaintiff was not sufficiently deficient in adaptive functioning to satisfy the diagnostic description of mental retardation in the introductory paragraph of Listing 12.05.  The ALJ, however, did not provide

---

[3] Plaintiff does not argue that her mental impairments meet the requirements of Listing 12.05(D).

1   this reason for his decision.  As such, the Court can not consider it.  *See Stout v. Commissioner,*

2   *Social Sec. Admin*, 454 F.3d 1050, 1056 (9th Cir. 2006); (a court may not "affirm the decision of

3   an agency on a ground that the agency did not invoke in making its decision.")  *Connett v.*

4   *Barnhart*, 340 F.3d 871, 874 (9th Cir.2003) ("[w]e are constrained to review the reasons the ALJ

5   asserts.")

6         **2.**        **Plaintiff's Symptoms Do Not Satisfy 12.05(A)**

7         The requirements in paragraph A are met when there is mental incapacity evidenced by

8   dependance upon others for personal needs (e.g., toileting, eating, dressing or bathing) and an

9   inability to follow directions, such that the use of standardized measures of intellectual

10  functioning is precluded.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(A).

11        The ALJ found that Plaintiff did not meet the requirements of Listing 12.05(A) because

12  Plaintiff "testified that she provides sole care for her 3-year old daughter and takes care of her

13  own personal needs."  (AR at 22.)  The ALJ further noted Plaintiff's statements to physicians that

14  she washes dishes, cleans her room, cooks, cleans, does laundry and rides the bus independently.

15  (AR at 24-25.)  The record also shows that while Plaintiff may be limited in her reading and

16  writing abilities, Plaintiff can nonetheless read and write to some degree.  (AR at 32.)

17        Plaintiff argues that "[t]he assumptions of intact functioning without assistance is not

18  established in the record."  (Pl.'s Opening Br., 9: 23-4., Doc. 14.)  Plaintiff cites to the testimony

19  of Claryce Taylor, who stated that she "wakes [Plaintiff] up in the morning and helps with the

20  child[,]" and further argues that Plaintiff can not read or write.  (Pl.'s Opening Br., 9: 24-6., Doc.

21  14.)  The Commissioner does not articulate a specific response to this argument.

22        Plaintiff's statements to physicians and her testimony at the administrative hearing

23  regarding her daily activities and ability to care for herself have been consistent since Plaintiff's

24  first claim for social security income in 2003.  Plaintiff's statements have consistently reflected

25  Plaintiff's ability to take care of herself with respect to the most basic functions of living, *i.e.,*

26  toileting, eating, dressing, bathing, cleaning, cooking, *etc.*  Moreover, there is nothing in the

27  record to indicate standardized measures of intellectual functioning is precluded.  Accordingly,

28

1 substantial evidence in the record supports the ALJ's determination that Plaintiff does not meet

2 the requirements of Listing 12.05(A).

3       **3.**      **Plaintiff's Symptoms Do Not Satisfy 12.05(B)**

4       The requirements of paragraph B are met when the claimant can demonstrate a valid

5 verbal, performance, or full scale IQ of 59 or less. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §

6 12.05(B).  In discussing the validity of an I.Q. score, the Ninth Circuit has stated that "[t]he I.Q.

7 score must reflect the plaintiff's true abilities as demonstrated by his performance at work,

8 household management, and social functioning." *Williams v. Shalala,* 1994 WL 502636 at *5

9 (9th Cir. 1994)**;** 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)-(C).  According to the

10 regulations, in assessing the validity of a claimant's I.Q., "[i]nformation from both medical and

11 nonmedical sources may be used to obtain detailed descriptions of the individual's activities of

12 daily living; social functioning; concentration, persistence and pace; or ability to tolerate

13 increased mental demands (stress)."  Accordingly, Commissioner's regulations require a

14 narrative report that "comment[s] on whether the IQ scores are considered valid and consistent

15 with the developmental history and the degree of functional limitation."  20 C.F.R. pt. 404, subpt.

16 P, app. 1, § 12.00(A)(6)(a).

17       An ALJ may reject an I.Q. score and deem it invalid if it is inconsistent with other

18 observations.  *See Markosyan v. Sullivan,* 933 F.2d 1014 (9th Cir. 1991) (finding that an IQ test

19 resulting in a full-scale score of 59 was not credible when inconsistent with other observations);

20 *Brooks v. Barnhart,* 167 Fed. Appx. 598 (9th Cir. 2006) (upholding a finding of non-disability

21 despite the fact that the claimant had a Verbal I.Q., score of 59, because the I.Q. scores were

22 likely invalid and the claimant's '"cognitions were not grossly impaired" at the clinical

23 interview."'); *Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir.1992) ( "This court, however, has

24 recognized that a valid I.Q. score need not be conclusive of mental retardation where the I.Q.

25 score is inconsistent with other evidence in the record in the claimant's daily activity and

26 behavior."); *Soto v. Secretary*, 795 F.2d 219, 222 (1st Cir.1986) (Secretary "is not obliged to

27 accept results of claimant's I.Q. tests if there is a substantial basis for believing that claimant was

28

1  feigning the results."); *Strunk v. Heckler*, 732 F.2d 1357, 1360 (7th Cir.1984) (ALJ could reject
2  I.Q. test.).

3      The ALJ found that Plaintiff did not meet the requirements of 12.05(B) because Plaintiff
4  "does not have a valid verbal, performance, or full scale I.Q. of 59 or less."  (AR at 23.) Plaintiff
5  argues the ALJ erred in finding that Plaintiff did not satisfy 12.05(B) because on April 13, 2005,
6  Dr. Musacco found a Full-Scale I.Q. score of 59.  (Pl.'s Opening Br., 7: 21-4, Doc. 14.) Plaintiff
7  also argues that Dr. Musacco did not question the validity of the I.Q. scores.   (Pl.'s Opening Br.,
8  8: 1-2, Doc. 14.)  The Commissioner responds that the ALJ *did* question the validity of the I.Q.
9  score. (Comm'r.'s Resp., 9: 1-8, Doc. 15.)  Specifically, the Commissioner points out that Dr.
10  Musacco gave Plaintiff a "provisional" diagnosis of mild mental retardation because Plaintiff's
11  adaptive functioning was not significantly impaired, which was inconsistent with such a
12  diagnosis. (Comm'r.'s Resp., 9: 1-8, Doc. 15.)

13      The Court agrees with the Commissioner.  Dr. Musacco provided only a "provisional"
14  diagnosis of mild mental retardation in addition to acknowledging that objective observations
15  conflicted with the I.Q. scores calls.   Plaintiff's first examination in 2003 yielded a Full-Scale
16  I.Q. score in the upper-mild to low-borderline range, whereas Plaintiff's 2005 Full-Scale I.Q.
17  score fell in the mildly impaired range. (AR at 24.)  The ALJ noted that in both of Plaintiff's
18  examinations by Dr. Musacco in 2003 and 2005, Plaintiff did not demonstrate significant deficits
19  in her adaptive functioning.  (AR at 24.)  The ALJ further noted that Plaintiff's social skills,
20  grooming, hygiene, daily living activities and overall presentation were suggestive of borderline
21  intelligence. (AR at 24.)  The ALJ also noted the opinion of consultative psychologist Dr.
22  Hirokawa, who opined that Plaintiff had low average intellectual functioning.  (AR at 25.)

23      The medical evidence in the record is inconsistent with an I.Q. score of 59.   Accordingly,
24  the 2005 I.Q. score is properly viewed as invalid, and the ALJ's  determination that Plaintiff does
25  not meet the requirements of Listing 12.05(B) is supported by substantial evidence.

28  /./.

1          **4.       Plaintiff's Symptoms Do Not Satisfy 12.05(C)**

2          The requirements of paragraph C are met when the claimant meets the two prongs of

3   Listing 12.05(c).  Claimant must (1) have a valid verbal, performance or full scale IQ of 60

4   through 70, and (2) a physical or other mental impairment imposing an additional and significant

5   work-related limitation of function.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05(B).  An

6   impairment imposes a significant work-related limitation of function when its effect on a

7   claimant's ability to perform basic work activities is more than slight or minimal.  *See Fanning v.*

8   *Bowen,* 829 F.2d 631, 633 (9th Cir. 1987).

9          The ALJ found that Plaintiff does not have a valid verbal, performance, or full scale I.Q.

10  of 60 through 70.  (AR at 23.)  The ALJ also found that Plaintiff does not have an additional

11  physical or mental impairment which would impose a significant work-related limitation of

12  function.  *Id.*

13         Plaintiff argues the ALJ erred with respect to the I.Q. prong, referencing the 2003 I.Q.

14  scores found by Dr. Musacco (verbal of 71, performance of 70 and full-scale of 68) as well as the

15  2005 I.Q scores found by Dr. Musacco (verbal of 60, performance of 67 and full scale of 59).

16  (Pl.'s Opening Br., 7-8, Doc. 14.)  Plaintiff also argues the ALJ erred in finding that Plaintiff did

17  not have a physical or mental impairment imposing a significant work-related limitation, because

18  Dr. Musacco diagnosed Plaintiff with a dysthymic disorder and discussed significant depression.

19  (Pl.'s Opening Br., 8: 11-20, Doc. 14.)  Plaintiff also argues this second prong is met because Dr.

20  Hirokawa opined Plaintiff had depressive and personality disorders.  (Pl.'s Opening Br., 8: 11-

21  26, Doc. 14.)  Plaintiff further noted that the state agency physician's findings of moderate

22  deficiencies of concentration, persistence and pace sufficiently meets the second prong.  (Pl.'s

23  Opening Br., 9: 4-6, Doc. 14.)  The commissioner does not articulate a specific response to these

24  arguments.

25         With respect to the first prong, *i.e.,* valid I.Q. scores between 60 and 70, for the same

26  reasons discussed above, *see supra* Section IV.B.3, the Court finds that the ALJ's decision is

27  supported by substantial evidence in the record.  As referenced by the ALJ in his opinion, Dr.

28  Musacco, in both 2003 and 2005, noted that Plaintiff did not demonstrate significant deficits in

1   her adaptive functioning, and Plaintiff's social skills, grooming, hygiene, activities of daily living

2   and overall presentation is suggestive of borderline intelligence.  These objective observations

3   are inconsistent with and cast doubt on the validity of the I.Q. scores.

4        With respect to the second prong, *i.e.,* an additional physical or mental impairment

5   imposing a "significant work-related" limitation, the Court finds the ALJ's findsings are

6   supported by substantial evidence in the record.   Plaintiff's arguments relating to findings of

7   moderate difficulties of concentration, persistence  and pace are not appropriate in the 12.05©

8   analysis.  This argument is more appropriate in the context of a 12.05(D) inquiry, which

9   specifically endeavors to identify "marked" work-related limitations and difficulties.[4]  Subsection

10   C, on the other hand, regards actual physical or mental impairments.

11        There is substantial evidence in the record to support the ALJ's conclusion that Plaintiff's

12   depression and dysthymic disorder does not impose a significant work-related limitation of

13   function.  Contrary to Plaintiff's arguments, Dr. Musacco did not discuss any significant

14   depression.  Rather, Dr. Musacco offered the lesser diagnosis of dysthymic disorder, and only

15   later offered the unspecified diagnosis of depressive disorder. (AR at 227.)  Moreover, this

16   diagnosis was not predicated on Dr. Musacco's professional opinions, but rather, was "offered to

17   account for the claimant's self-report of chronic feelings of sadness, irritability, anger and guilt."

18   (AR at 227.)  Similarly, Dr. Hirokawa's diagnosis of depression does not indicate a significant

19   work-related limitation of function.  Indeed, Dr. Hirokawa stated that "claimant's symptom

20   severity of depression was within the mild range . . ."  (AR at 204.)

21        As noted by the ALJ, both examining physicians concluded Plaintiff could perform

22   simple or repetitive work activities.  (AR at 24-25, 228, 204-05.)  The state agency medical

23   consultant also concluded plaintiff could perform simple repetitive tasks.  (AR at 25.)  Dr.

24   _____

25        [4] Plaintiff does not argue that she meets the requirements of Listing 12.05(D).  Even assuming, however,
Plaintiff's arguments relating to her specific work-limiting attributes were intended to invoke 12.05(D) analysis,

26   substantial evidence supports the ALJ's findings that Plaintiff does not meet the requirements of 12.05(D).  The vast
majority of Plaintiff's specific work-related limitations are listed as "Not significantly Limited."  (AR at 217-18.)

27   The only work-related limitations which were deemed to be more than "Not Significantly Limited" were the qualities
pointed out by Plaintiff which, as Plaintiff also pointed out, were listed as only "moderate" difficulties.  Listing 12.05

28   requires specific "marked" difficulties.  Nothing in the medical record indicates Plaintiff has "marked" difficulties
with any work-related activities.

1  Hirokawa's functional assessment indicates Plaintiff's unspecified depressive disorder would not

2  present any significant work-related limitation of function.  (AR at 204-05.)  The findings of

3  psychiatrist M.C. Vea, M.D. as a whole do not indicate Plaintiff has any significant work-related

4  limitation of function.  (AR at 217-19.)  As the ALJ noted, Plaintiff's activities of daily living

5  and interactions with medical examiners indicate Plaintiff is not significantly limited by her

6  depressive impairments. (AR at 24-5.)  Indeed, all the medical evidence in the record supports

7  that ALJ's finding that Plaintiff does not have any  physical or other mental impairment imposing

8  an additional and significant work-related limitation of function.

9                                    **V.   CONCLUSION**

10         Based on the foregoing, the Court finds that the ALJ's decision is supported by

11  substantial evidence in the record as a whole and is based on proper legal standards.

12  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the

13  Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in

14  favor of Defendant Michael J. Astrue, Commissioner of Social Security and against Plaintiff,

15  Arlonda Boatwright.

16         IT IS SO ORDERED.

17  **Dated:    February 15, 2012                          /s/ Barbara A. McAuliffe**
                                                   UNITED STATES MAGISTRATE JUDGE

18

19

20

21

22

23

24

25

26

27

28